My name is Jeremy Pernodal and I represent the plaintiff appellant in this case, the Access Fund. I'd like to reserve four minutes for rebuttal. The District Court's decision upholding an absolute ban on all forms of climbing at Cave Rock has implications beyond the parties in this case. The federal government owns thousands of acres of land throughout the United States to which many Indian groups have attached religious significance. This Court's decision, the District Court's decision, will now permit the government to regulate the conduct of non-believers to conform to the religious beliefs of those native groups. But this kind of government regulation violates the Establishment Clause. And to explain that position, I'd like to cover three points today. First, that the climbing ban is an impermissible accommodation of religion. Second, that the only reason for prohibiting all forms of climbing on all areas of Cave Rock is, at bottom, based on the Washoe religious view, that rock climbers drain the rock of its spiritual power. And three, that the reasonable observer, aware of these two facts as well as all the facts underlying this administrative decision, would conclude that the Forest Service has endorsed religion and seeks to advance it here by regulating the conduct of non-believers. Now, I want to discuss accommodation at the outset, because not all accommodation is good accommodation. And an impermissible accommodation violates the Establishment Clause because it conveys a message of endorsement of religion. Here, the District Court found, and the government has argued in this Court, that the Forest Service's decision is a permissible accommodation of Washoe religious beliefs. Let me interrupt you just for a minute, please. You're assuming that we would apply the Lemon test, is that correct? Right. I think under this Court's jurisprudence, both the Lemon test, the three prongs of the Lemon test, as well as the endorsement test, are applied. And I think that's … Well, I understand that, but the Supreme Court is the one that gets to rule our views, and they've indicated on several cases that the Lemon test is not applied. It seems to me that an argument could be made that this is very close to the Ten Commandments case, in which the Supreme Court specifically said the Lemon test would not apply, and indicated its future may be questioned. So if we go to a more general view, as outlined by former Chief Justice Rehnquist, we would consider the issue on the basis that there's nothing wrong with the government assisting religions, they just can't show preference. If we took that position, would your argument change? No, I don't think so. I mean, our argument is that here the Forest Service, by basically giving only credence to the Washoe religious beliefs about Cave Rock, have ignored other people who have secular interests at Cave Rock, including our client, the Access Fund, who represent rock climbers. I think in the … Does this involve issues of cultural preservation, of historic preservation, which is not present in, call it the mind-run religion case? This is kind of a special case, isn't it? I don't think so. Here, the Forest Service in the environmental impact statement gave essentially three reasons for banning climbing. The first two reasons, which are secular reasons, would justify a climbing ban on only a small portion of Cave Rock. But the third reason, which is their reason for banning climbing over the entire area of Cave Rock, is essentially grounded in Washoe religious beliefs. The first reason, according to the Forest Service, is that a climbing ban is necessary to protect the archaeological resources at Cave Rock. Specifically, they're talking about one wood-wrapped midden that's located in the main cave at Cave Rock. But in the environmental impact statement, the Forest Service acknowledges that one way to mitigate the concern about that wood-wrapped midden would be to ban climbing on the particular route located next to the wood-wrapped midden. The second reason that they gave is that climbing affects the setting and feeling of the historic transportation corridor that Cave Rock has been recognized for. But again, they're talking only about a small portion of Cave Rock on the west side of Cave Rock. This is in the environmental impact statement. The Forest Service says there's an old trestle trail where some climbing occurs near that trail, and the presence of the climbers affects the setting and feeling of that historic area. But again, one way to mitigate that effect would be to ban climbing in that particular area. There are approximately 60 climbing routes at Cave Rock, if you count all the hybrid... How many? I'm sorry? How many climbing areas? 60 climbing routes, if you count all the different hybrid routes that are available. And how many of those are within close proximity of the cave? Well, a great number of those are located in the main cave. But only, according to the environmental impact statement, only one route is located near the wood-wrapped midden. That was the archaeological concern. When we get to the heart of the problem, it seems to me that your position would essentially prevent the federal government from designating these cultural places, which may also have religious significance. That's not our position. Our position, in fact, is that the government could recognize places of solely religious significance to Native American groups as a traditional cultural property under the National Historic Preservation Act. The problem is, when the government goes so far as to regulate the conduct of people, normal users of that property, based entirely on the religious views of the Native group. I mean, here, the reason climbing was determined to affect the setting and feeling of cave rock as a traditional cultural property. I'm sure I understand that you're saying that, had these restrictions been geographically limited to certain parts of the rock and so forth, that would have been a better solution than the one that came up with it. I understand that that's what you're saying. How does that reduce whatever religious component the matter may have? I'm sorry? How does that? How does that change the whatever religious component, the action? Well, my point in that is that there may have been secular justifications for regulating portions of climbing at cave rock. That depends what we call secular and non-secular in this context. Right. But the reason for banning climbing in all areas of the rock, in our view, is based on the Washoe religious belief that climbers have a sustained contact with the rock of its spiritual powers. Well, let me ask you that. You know, do you think that the government can ban repelling off of the National Cathedral, which is an historically preserved religious institution in the Federal Government? Well, there may be non-religious reasons for banning climbing or repelling off of the face of the National Cathedral. It might be a safety hazard or Let's say in addition to safety, they said, well, look, typically when you have a church, cultural respect to the religion means that you don't repel off of that kind of a facility. So why isn't that the same thing? Because this site has been used for the last, at least the last 20 years, as a place for rock climbers. It's an outdoor recreational place. And, in fact, back in the early 90s, the government had no problem with rock climbers there. The only reason that they started to think about this question was because the Washoe tribe alerted the Forest Service and said Wait, so it's not there, though. That sort of sounds like you're making an adverse possession argument. In other words, we've been doing it for 20 years, and we've been driving our pitons in without specific permission. And since you didn't do anything, now it's kind of Johnny Cullen, likely, for the government. So I'm having some trouble fitting that into the legal structure. Maybe you can help me on that. Well, my point is that the only reason that climbing is considered to be inconsistent with the historic nature of cave rock as a traditional cultural property is based on the Washoe religious view. I mean, the government has basically said that the reason rock climbing affects the traditional cultural properties is because, according to the Washoe, the sustained intimate contact with climbers on the rock drain it of its power. I mean, the Washoe have no problem with, or at least they have much less objection to, the thousands of cars that go through the tunnel, through cave rock in the tunnel. Let's break that into two things. Number one, the Forest Service doesn't have anything to do with this transportation corridor through the cave, correct? Sure. They can't regulate that. So in honesty, don't we have to kind of put that aside? My point is it helps to understand why climbing is considered by the government to be a problem at cave rock. Well, on that point, maybe you can help me, because I read that there is this belief that it would affect the spiritual or other nature of the situation. But don't the Washoe also object to these other activities that are also going to be permitted, like other people just moseying around the area, picnickers, hikers? Don't they also object to that? Well, according to the Washoe, at the very beginning of this entire process, they identified rock climbing as the single most adverse effect at cave rock. And in fact, they've said that climbers are more of a problem to their... That's not answering. I know that. Well, I'm getting to... I haven't answered my question of what do they say about these other people that walk around. I have said that hikers are not as problematic to them as rock climbers, because hikers... Don't they also say that that would be, in their view, that would be contrary to let hikers on here? I mean, if they had their druthers, none of these people would be touching the rock. Well, that's true. But here, in this administrative process, they have focused almost exclusively on climbing. They said that hikers tend to stay on the trail. They don't touch the face of the rock like rock climbers do. As I understand it, it's specifically religious reasons for taking that position. Isn't that correct? That hiking is somehow more deleterious to their religious beliefs than these other things. I'm sorry, but could you repeat your question? You've been interpreting their views about the rock and its uses. Haven't they singled out rock climbing because of its religious significance with respect to the rock as being a reason by its principal enemy here? Right. That is our position. I think that's supported by the record, that they have focused exclusively, almost exclusively, on climbing because that's the most bothersome to their religious beliefs. Could I ask you a question that concerns me of what we have to decide? Here they were clear that it wasn't just a religious issue. There's historical, genealogical, et cetera. If it's valid on any one of those other points, do we sustain the Forest Service? No, I don't think so, because those secular justifications justify banning climbing in only a small portion of the rock. Here they've banned all climbing or all touching of the face of the rock in the way that rock climbers do, and that's based on ... How do we find that they made that determination? That is, that if they took away the others, if they took away the religious aspect, they would only ban just the face. How do we find that? That's supported in the final environmental impact statement where the Forest Service explains the effects of climbing on cave rock as an historic transportation corridor, and then there's a section that explains the effect of climbing on cave rock as on the archaeological resources at cave rock. Did you want to reserve your time? You've got about two and a half minutes. May it please the Court. Sharon Swingle from the Department of Justice representing the Department of Agriculture and the Forest Service in this case. The Forest Service has acted here to protect a site of significant cultural and historic importance. It is undisputed that cave rock is the site of most significant cultural and spiritual significance to the Washoe Indian tribe. It has been used and inhabited by the tribe for at least 1,500 years and by their descendants since time immemorial. In addition, it is a site of considerable importance as a transportation district. It shows four generations of road building side-by-side, and it is a protected archaeological site. Would you respond to what counsel just said, that if you're just dealing with archaeological, it would only be one small part of what's involved with the sanctions that you're putting on the entire process? The archaeological site at issue is a limited portion of the rock. That is correct. Is that true of cultural and all other aspects other than the religious aspect? Absolutely not, Your Honor. Tell me where it's different. Well, the cultural resource here is a resource because of the property's longstanding use and tie to the Washoe culture, and that has both cultural and religious significance. But its religious significance does not disable the Federal Government from considering that site and acting to protect its cultural importance, as this Court recognized in a very similar circumstance in Shoya Reddy Mix, when the Court recognized that protecting the integrity and the physical integrity of sites of sacred significance to Native Americans is of secular importance to the nation as a whole and can be a valid secular governmental purpose. Well, just come back to the cultural part. Is it the cultural of the tribe, the culture of the tribe that's being protected, or is there some other culture that is involved? Well, I think it's a little more complicated, Your Honor. We are working to protect a cultural resource that has its significance because of its longstanding use by the Washoe tribe, but that culture is part of the culture of this country. And to suggest that its importance is limited to the Washoe tribe is simply not correct. American history is made up of many as a Federal interest on behalf of all of us. Are there any groups or individuals fighting for this type of regulation as a matter of cultural preservation? It seems to me that all the objection has come from the tribe on what purport to be religious grounds, in their view, anyway, or your opponent. As a factual matter, Your Honor, that is not correct. As you know, there were several stages in the environmental impact assessment here, and we received over a thousand comments at each stage, a number of which, a significant number of which, were from non-Washoe people seeking additional protection for the site. Both Federal and State historic preservation officers opined after the first draft environmental impact statement that permitting rock climbing at the site would not adequately protect the cultural and historic resources there, that it was potentially inconsistent with Federal law. The objections, though, seem to me to be pretty much tied in with specific religious aspects of the rock. For the Washoe people, that is correct, but the objections are not limited to their objections. Other people, as the Forest Service found in the environmental impact statement, were also offended by the visual sight of climbers on the rock, the physical integrity of the site, and the fact that it is damaged by rock climbing because it requires installing permanently bolts into the rock. As Your Honor knows, there is an executive order which affirmatively mandates that the Federal Government seek to protect the physical integrity of Indian sites from damage. Is it true that the Washoe also objected to some of these other uses that the Forest Service ended up permitting, like the picnicking and hiking? My understanding, and I am not an expert on the Washoe tribe or its religious beliefs, but my understanding is that they believed all uses of the site were impermissible. What they actually requested was to have ownership or possession of the property transferred to them exclusively and to ban all other uses of the site. And exactly what is climbing? Does it include unassisted, like, bouldering or not using technical climbing equipment, or how is that defined by the ban? I believe that's correct, Your Honor. As a practical matter, I don't believe there was non-technical climbing occurring at the site. My understanding is that the climbing that happened there was using bolts, because of the nature of the formation. It's a very vertical formation, and the bolts were necessary to climb up the front. I don't believe that there has been any other form of climbing there. Are there other uses besides climbing that are documented in the record in terms of frequency of use? There is a history dating back some decades of other public recreational uses, such as walking. I don't believe that those uses have been frequent, but they have occurred and have occurred for decades, including during the period of historic use of the site. One of the objections made by Access Fund, and one of their points when they're looking at cases, there have been a few district court cases in this area, is the note that this is an actual, it's a mandatory ban on climbing, as opposed to a voluntary ban or some accommodation where you'd let some climbing but not other climbing. How do you respond to the fact that since it's mandatory, it changes the character? I don't believe that's correct, Your Honor. The mandatory ban on climbing is because climbing is a destructive practice for a national resource. It is damaging to the physical allowed on Mount Rushmore. It has the same effect and can similarly likewise be banned. It is harmful to the archeological site and to the historic transportation district there as well. The fact that that also serves to increase the access available to Washoe people and to minimize the intrusion to their use of the site is not the only reason that is at issue here. Well, where do you kind of draw the line? You're saying that, of course, the Washoe people can now come and use the facility or the area, but if the government is basically making a rule that protects it for a particular religion, does that change the scope of permissible accommodation? I just want to correct. The government is in no way establishing a rule for one religion. This area is open to anyone to come to pray. Any religious group who wish to come and use the site for religious practice could do so in the same way as the Washoe people. If someone who had no religious beliefs wanted to come and meditate on the site, that would be completely permissible under the challenged action. So the notion that this is some sect-specific devotion of governmental property is simply not accurate. Although if it weren't for the Washoe spiritual beliefs, then the government wouldn't be looking to protect this, at least as a cultural resource, correct? Because that is the derivation of its significance in the same way that, for example, the Tuaros Synagogue in Philadelphia has cultural and historic significance for the country, or the First North Church in Boston, from a Christian derivation, has cultural and historic importance for the government as well. The government can act as it has with the Southwest Mission churches, which continue to be used as places of worship to protect those properties which, as part of the cultural and historic resources of this country, merit protection, and to serve the country. It's not entirely analogous, though, are they here? The only reason this has any cultural significance is because of its religious significance, isn't that true? Well, I think the same would be true of the Tuaros Synagogue or the First North Church in Boston. Their primary importance derives from a longstanding... And chaotic aspects, too, I think. At least the North Church in Boston does that. Well, and the Washoe people, as the environmental impact statement said, have used this property through times of great dislocation and difficulty for their culture, and that in itself becomes a testament to the role of Native Americans in our culture and history. A closer analog might be the Church of the Transfiguration, which sits on National Park Service property in Wyoming, and although it's not Forest Service, I think it's Park Service, and that is a Christian church that's apparently preserved as an historic site. I guess it's the difficulty, I think, that Access Fund has is that it's a single religion that is the beneficiary of the protection. And what, in your view, what is the, what is the case precedent that says that's okay to preserve that for cultural and religious reasons? Well, I would say two things. I say first, as a factual matter, that's not correct because the site is open to use for everyone. But this Court recognized in Kamek, for example, in which the Court upheld the Good Friday closing law, that the fact that a particular State action may redound primarily to the benefit of one particular religious group doesn't necessarily invalidate it. And more generally, in Cholla Redemix, you know, as the Court recognized, in a particular instance, the government may be acting to protect a site of significance to one cultural and religious group. But the fact that the Court, that the government would do the same thing to protect sites for other religious groups or cultural backgrounds shows that the Court's interest is broader and more secular. And, of course, in this case, we can point to countless examples of precisely that, different religious and cultural backgrounds. How long has the Tribe been using this as religious significance sufficient that they, it involves their system of worship? At least 1,500 years, Your Honor. So under the Ten Commandments case in Texas, the swing vote was Justice Breyer that sort of had a statute of limitations theory. I take it 1,500 years would be acceptable to him. I think so, Your Honor. You say that this particular restriction will not prevent other religions from coming and worship there. Is there anything in the record that indicates that any other religion has ever come there to worship? I am not aware of any, Your Honor, although some of the individual commentators did discuss being present at the site and feeling a sense of spirituality, some of the non-Washoe commenters. If I may speak briefly to the question of accommodation, I just want to respond to the argument raised by the amicus that the accommodation here is impermissible or that the government can have no interest in accommodation because somehow the burden is being imposed by private entities. Just as a factual matter, I believe that is incorrect, or a question of mixed law. In fact, the government owns this property. The government has exclusive direction and authority to decide who gets to use the property. And so it is the government's action in allowing or not allowing rock climbing to take place that is going to be posing the burden here. The argument of your adversary is that the government has just extended it too far. It should have been more restrictive and allow some type of rock climbing in the more remote areas where they won't be seen from the roads or whatever, and that the area involved is so large that an accommodation could have been made. What's your response to that? Well, I'm not sure that was quite the argument he was making. As I understood it, it was that we could have interests only in protecting the archaeological sections of the site, but not the broader site because of its cultural significance. To the extent he's making the variant of the argument that you've described, I don't believe it's supported by the record. I mean, there is an extensive, quite extensive administrative record here in which the Forest Service exhaustively cataloged the various cultural, historic, archaeological interests at stake, exhaustively cataloged the various ways that those might be protected, and then after quite lengthy consideration of many, many, many comments, both written comments that were submitted, comments that were presented in focus groups and discussion groups with the public, after a decade-long decisional process, came to the conclusion that this was the best way to protect this important site. I think his argument, the argument as I hear it, is that you have some good secular reasons for aspects of the region, but that the only argument articulated to close climbing completely is a religious argument, not a secular argument. So two questions. One, if we accept his characterization that it is a religious-based argument, is that legitimate? And second, in your view, does the record reflect that it was solely a religious-based argument? Just so I can understand, if it is solely religious, is that? Would that be acceptable under the First Amendment? I think the government could, under the accommodation cases, work solely for religious reasons to accommodate the religious practice of this group. I do believe that would be permissible. But I also think that question is not before the Court. I think this Court has already recognized in Shoya Redemix that working to preserve, protect the integrity of a site which is sacred to a group, but part of this nation's cultural heritage, is not a religious motivation. It is a secular one. If the Court has no other questions. Thank you. Thank you. If I could just address at the outset the accommodation argument that was just being made. Our position is here that there is neither a government-created burden that would justify an accommodation nor the kind of significant government burden that the Court has held is necessary in order to justify an accommodation. Here, in fact, in the final environmental impact statement, and this is at the record excerpts, page 69, the Forest Service states that they have never restricted the practitioner's ability to freely express their beliefs through ceremonies and traditional rites, and access to the site has not been prohibited. And the kind of religious objection here is really just the presence of rock climbers, and that's not the kind of burden that the Court's talking about in those accommodation cases. In fact, in Cutter v. Wilkinson, the 2005 decision, the burden at issue was an absolute prohibition on federal prisoners from engaging in their religious exercises in prison. Here, the Washoe have continued to use Cave Rock for religious purposes, despite the presence of climbers for the last 20 years, and despite the four lanes of traffic running through the rock. I also wanted just to briefly touch on, to correct one statement. And I think there is evidence in the record that there is some traditional climbing that goes on at Cave Rock, and that's found in the final environmental impact statement. Also, there is- Can you say there is, would that also be banned under the alternative six? Yes. Yes, alternative six bans, all climbing, all forms of climbing. Thank you. Okay. And also, I think counsel for the government mentioned that, and throughout the brief, states that rock climbing is considered to physically deface Cave Rock. But I wanted to touch on that as well, because in the environmental impact statement, the Forest Service makes a finding of no significant impact on the geological structure at Cave Rock. Now- Is there a difference? That seemed to me to be a semantic difference between structural integrity- Right. Versus physical appearance or defacement. Right. Do you agree they're two different things? I agree, and I want to address the second point now, which is during the Section 106 process that occurred in the mid-'90s, the Forest Service did state that they viewed rock climbing to cause an adverse effect on Cave Rock. But they attributed that, the reason for that, to the Washoe Tribe, because the Washoe Tribe viewed climbing to have an adverse effect on Cave Rock. And in the mid-'90s, late-'90s, 1998, the government agencies with jurisdiction over Cave Rock employed some consultants to do a very significant study of Cave Rock and its significance to the Washoe. And in that report, and this is in part of the record, they state that the presence of bolts in the climbing equipment is considered by the government to have no significant impact, and to have no impact, and that's not related to the geological impact of the rock, but that the placement of a single climbing bolt is considered by the Washoe Tribe to be a defacement of Cave Rock. Thank you. Thank you. Thank both counsel for your arguments. It's a very interesting case, novel case, very good arguments, and briefs, I might add, by both sides. The case of Access Fund versus Department of Agriculture is submitted.
judges: Wallace, Cudahy, McKeown